IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 12-5402 (JBS/AMD) |
| v. | : | |
| | : | **OPINION** |
| GARY S. CARDACI, et al., | : | |
| Defendants. | : | |

APPEARANCES:

Yonatan Gelblum, Esq.
Claire H. Taylor, Esq.
U.S. DEPARTMENT OF JUSTICE
Tax Division
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
        Attorneys for Plaintiff

Anthony P. Monzo, Esq.
Andrew D. Catanese, Esq.
Paul Kapish, Esq.
MONZO CATANESE P.C.
211 South Main Street, Suite 104
Cape May Court House, NJ 08210
        Attorneys for Defendants


**SIMANDLE, Chief Judge:**

## I. Introduction

The United States government brings this action to reduce to judgment federal tax assessments against Defendant Gary S. Cardaci, who failed to pay over more than $80,000 in taxes withheld from the wages of his employees at the Holly Beach Construction Company. Pursuant to 26 U.S.C. §§ 6321 & 7403, the

government seeks to foreclose a federal tax lien on real property owned by Mr. Cardaci and his wife, Defendant Beverly M. Cardaci, as tenants by the entirety, and force a sale of the marital home and surrounding property. The government seeks summary judgment [Docket Item 27] against the Cardacis and a default judgment against two Defendants who have potential claims to the real property but who have failed to appear in this action, Defendants Ed Wood Custom Drywall, Inc., and Tri-County Building Supplies, Inc. The Cardacis oppose summary judgment and cross-move for summary judgment [Docket Item 33] on the grounds that (1) the assessment procedure was defective and (2) the district court should use its discretion, as set forth in United States v. Rodgers, 461 U.S. 677 (1983), not to force the sale of the marital home.

For the reasons explained below, because the government has adduced proof that the proper procedure was followed and the tax assessments were timely, the Court will enter an Order reducing the lien to judgment. The Court also will enter default judgment against Defendants Ed Wood Custom Drywall and Tri-County Building Supplies.

The key inquiry for the Court is whether the equities present in this case militate against a forced sale of the Cardaci's marital home. As discussed below, this Court has limited discretion, pursuant to 26 U.S.C. § 7403(a) and the

Rodgers precedent, to decline to order a forced sale of the
marital home when the tax lien in question pertains to only one
spouse. The existing record raises a significant question that
the forced sale should not be allowed in this instance. However,
the present record is incomplete and lacking in essential facts
necessary to award summary judgment to either party. Therefore,
the Court will deny in part without prejudice both the
government's motion for summary judgment and the cross-motion for
summary judgment. The determination whether to permit forced sale
of the Cardaci marital domicile in execution of the judgment
against Defendant Gary S. Cardaci must await a final hearing.

## II. Background

Most of the material facts are not in dispute. Defendant
Gary S. Cardaci admits that he was responsible for withholding,
collecting and paying over payroll taxes withheld from the wages
of employees of Holly Beach Construction Company, and Mr. Cardaci
willfully failed to do so. (Statement of Material Facts ("SMF")
[Docket Item 27] ¶ 1.) During the period from the first quarter
of 2000 through the first quarter of 2001, Mr. Cardaci failed to
pay over approximately $49,600, and now is liable for penalties
in excess of $80,000, plus interest, under 26 U.S.C. §§ 6672 &
6621.[1] (SMF ¶ 2; Consent Order [Docket Item 28].)

_____

[1] The penalties assessed by the Internal Revenue Service
were as follows: $9,988.44 for the period ending March 31, 2000;
$13,427.07 for the period ending June 30, 2000; $10,641.47 for

According to the government, assessments for the penalties were made on September 2, 2002. (Pl. Exs. 101-105 [Docket Items 27-4 at 4, 27-5 at 3, 27-6 at 3, 27-7 at 3, 27-8 at 3].) As proof, the government produces a "Certificate of Assessments, Payments, and Other Specified Matters," known as Form 4340, for each penalty assessed. (Id.) Defendants admit that the Forms 4340 show assessments were made on September 2, 2002, but Plaintiffs contend they were not provided a Form 23C, a summary record of assessment signed by an assessment officer, as required by 26 C.F.R. § 301.6203-1, and that the first correspondence they received from the government showing a civil penalty was dated October 27, 2003. (Pl. Resp. to SMF ¶ 3; Pl. Ex. 106 [Docket Item 27-9] ¶ 13.)

Mr. Cardaci, and his wife, Beverly M. Cardaci, own as tenants by the entirety real property located at 424 Breakwater Road ("the property") in Cape May, N.J. (SMF ¶ 4; Cardaci cert. [Docket Item 38-1] ¶ 5.) The Cardacis have lived on the property for 34 years, and currently live there with their two adult sons, their daughter-in-law, and their 18-month-old grandson.[2] (Cardaci

_____

the period ending September 30, 2000; $9,387.69 for the period ending December 31, 2000; and $6,159.14 for the period ending March 31, 2001. (Consent Order ¶ 1.) As of February 12, 2013, the balance due on the assessments was $80,083.87. (Id. ¶ 2.)

    [2] While this matter was pending, Anthony Monzo, Esq., counsel for the Cardacis, informed the Court during a telephone conference that two step-children of one of the Cardaci sons, ages 10 and 11, have moved into the house, as well. At this time,

cert. ¶¶ 5, 10.) The government acknowledges that Mrs. Cardaci was not involved in, or responsible for, the tax penalties incurred by Mr. Cardaci. (Id. ¶ 7; SMF ¶¶ 1-2.)

## III. Standard of review

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if, based on the evidence in the record, a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. Id. The court will view evidence in the light most favorable to the non-moving party and "all justifiable inferences are to be drawn in [that party's] favor." Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

When ruling on cross-motions for summary judgment, the court "must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." United States v. Kramer, 644 F. Supp. 2d 479, 488 (D.N.J. 2008) (citing Williams v. Philadelphia Housing Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994), and Matsushita Elec. Indus. Co., Ltd. v. Zenith

---

there is no record evidence of the step-children living on the property.

Radio Corp., 475 U.S. 547, 587 (1986)).

**IV. Discussion**

    **A. Government's motion for summary judgment & default judgment**

        **i. Timeliness of this action**

The government may bring a suit to collect unpaid taxes within 10 years of a timely assessment of the tax. 26 U.S.C. § 6502(a)(1). An assessment is timely if it is made within three years of the filing date of the related tax return. 26 U.S.C. § 6501(a).

The government contends that assessments for these tax penalties were made on September 2, 2002 -- within three years of the filing date of the related tax returns associated with the taxes that should have been withheld and paid over in 2000 and 2001. (Pl. Mot. Br. at 2.) Because this suit was filed on August 28, 2012 -- within 10 years of the assessments -- the government submits that the action is timely. (Id. at 3.)

Defendants counter that the "assessment requirements set forth in 26 C.F.R. § 301.6203-1 have not been provided." (Def. Opp'n at 2.) The regulation provides that the date of an assessment is the date on the summary record of assessment signed by an assessment officer. § 301.6203-1. The summary record must provide "identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." § 301.6203-1. The summary record is

also known as Form 23C. <u>See</u> <u>Tucker v. C.I.R. Serv.</u>, 506 F. App'x 166, 168 (3d Cir. 2012); <u>In re Rosemiller</u>, 188 B.R. 129, 138 (D.N.J. 1995). Defendants argue that the government "should provide the required proofs to enable the court to determine whether proper notice was provided and therefore, Plaintiff's request for summary judgment should be denied." (Def. Opp'n at 2.) For support, Defendants cite <u>Brewer v. United States</u>, 764 F. Supp. 309, 318 (S.D.N.Y. 1991), which they misidentify as a District of New Jersey case, in which the district court judge deferred consideration of a similar motion for summary judgment in order to give the government time "to determine whether Form 23C was completed" with respect to the properties at issue. (Def. Opp'n at 2.)

The Defendants do not raise a genuine issue of material fact to defeat partial summary judgment on the timeliness of the assessments and compliance with IRS regulations. Federal courts, including the Third Circuit, generally hold that

> the IRS need not provide a taxpayer with a copy of the actual Summary Record of Assessment to fulfill its obligations to the taxpayer but may instead send a Form 4340, which creates a presumption that a Summary Record of Assessment, whether on Form 23C or RACS Report 006, was validly executed and certified.

<u>Tucker</u>, 506 F. App'x at 168-69 (internal quotation marks omitted) (quoting <u>March v. IRS</u>, 335 F.3d 1186, 1188 (10th Cir. 2003)); <u>see also</u> <u>United States v. Zarra</u>, 477 F. App'x 859, 860 n.2 (3d Cir. 2012) (holding that the Form 4340 is "presumptive proof of a

valid assessment," and stating "[w]e reject the Zarras' argument
that the Government was required to produce a summary record of
assessment signed by an assessment officer in order to prove the
date of assessment") (citing <u>Geiselman v. United States</u>, 961 F.2d
1, 6, (1st Cir. 1992)); <u>United States v. Tanchak</u>, No. 07-1475,
2009 WL 348270, at *4 (D.N.J. Feb. 5, 2009), <u>aff'd</u>, 351 F. App'x
729 (3d Cir. 2009) (stating that "to overcome the presumption of
correctness [of the Form 4340], Defendant must present evidence
beyond his self-serving statements, uncorroborated oral
testimony, or tax returns demonstrating that Plaintiff's
assessments are invalid," citing decisions in the Fourth, Fifth
and Eleventh Circuits); <u>In re Bosch</u>, 154 B.R. 647, 651-52 (Bankr.
M.D. Pa. 1993) (citing authority for the propositions that a
valid assessment may be established by Form 4340 and that those
forms are "routinely used in proving that tax assessments are
made" and constitute "presumptive proof of a valid assessment").
The fact that a district court may have asked for additional
proof of the date of assessment during a summary judgment
hearing, as the court did in <u>Brewer</u>, "does not mean that the Form
4340 was insufficient to establish the date of assessment as a
matter of law." <u>Zarra</u>, 477 F. App'x at 860.

Here, the Forms 4340 are presumptive proof of a valid
assessment, and Defendants offer no evidence to rebut the
presumption. The only document Defendants submit as evidence, in

opposition to government's motion or in support of its own cross-motion, is the declaration of Mrs. Cardaci, which makes no mention of the assessment date or lack of receipt of the assessment notice. (See generally Cardaci cert., attached to Defendants' reply brief in support of the cross-motion [Docket Item 38-1].) As the above citations indicate, the law does not require the government to produce a Form 23C if it provides a valid Form 4340, which the government has done here. Defendants have not created a genuine issue of material fact on the date of assessment and are not entitled to summary judgment as a matter of law. The Court finds that Form 4340 is presumptive proof of valid assessments, and in the absence of any evidence rebutting that presumption, partial summary judgment will be granted in favor of the government on the timeliness issue.

Based on the analysis above and the stipulated facts, judgment will be entered against Mr. Cardaci for a Trust Fund Recovery Penalty for the four quarters of 2000 and the first quarter of 2001, in the amount of $80,084.87, as of February 12, 2013, plus interest accruing after that date.

### ii. Forced sale

The government obtains a lien against "all property and rights to property, whether real or personal" of any person who neglects or refuses to pay taxes. 26 U.S.C. § 6321. The lien arises at the time the assessment is made and continues until the

liability has been satisfied or the statute of limitations bars enforcement of the lien. 26 U.S.C. § 6322. Whether a taxpayer has a property interest that constitutes "property and rights to property" within the meaning of § 6321 is a question of federal law, but one which "largely depends on state law," and, accordingly, courts "look initially to state law to determine what rights the taxpayer has in the property." United States v. Craft, 535 U.S. 274, 278 (2002). The "consequences that attach to the interests are 'a matter left to federal law.'" United States v. Jones, 877 F. Supp. 907, 916 (D.N.J. 1995) (quoting Rodgers, 461 U.S. at 683).

Federal law authorizes the government to enforce the lien or "to subject any property, of whatever nature, of the delinquent, or in which he has any right title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). The Court

> shall . . . finally determine the merits of all claims
> to and liens upon the property, and . . . may decree a
> sale of such property, by the proper officer of the
> court, and a distribution of the proceeds of such sale
> according to the findings of the court in respect to
> the interests of the parties and of the United States.

26 U.S.C. § 7403(c) (emphasis added). Section 7403 empowers the district court to order a forced sale of a family home in which a delinquent taxpayer had an interest at the time, even if the delinquent's spouse also has an interest in the property. Rodgers, 461 U.S. at 680. However, the district court has "limited discretion" to decline to order a forced sale when

innocent third parties have interests in the property. Id. at 711. Discretion accorded by § 7403 is "not . . . unbridled," and the limited discretion "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." Id. at 709, 711. See also United States v. Zimmerman, 491 F. App'x 341, 346 n.6 (3d Cir. 2012) (describing the holding in Rodgers as confirming the "very limited discretion not to order a sale").

The Rodgers court, ruling on two cases arising out of Texas and concerning the state-created "homestead" rights of spouses to tax delinquents, identified four non-exhaustive factors a court should consider when interests of third parties are implicated in a forced sale of a home. First, "a court should consider the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes," rather than a sale of the entire property, including the non-liable party's interest in the property. Id. at 710 (emphasis added). Second, the "court should consider whether the third party with a non-liable separate interest in the property . . . [has] a legally recognized expectation that the separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors." Id. at 710-11. Third, the "court should consider the likely prejudice to the third party, both in personal dislocation

11

costs" and in "practical undercompensation."[3] Id. at 711. Fourth, a "court should consider the relative character and value of the non-liable and liable interests held in the property." Id.

The government argues that Mrs. Cardaci's interest in the property as a tenant by the entirety does not bar the sale of the property. (Pl. Mot. Br. at 3.) The government acknowledges that Mrs. Cardaci is entitled to half the net proceeds of the sale of the property, citing Popky v. United States, 419 F.3d 242 (3d Cir. 2005), but she is not entitled to block the sale outright. (Pl. Mot. Br. at 4.)

In opposition, Defendants argue that there is precedent in this District for declining to order a forced sale of marital property held by tenancy by the entirety, citing two post-Rodgers decisions: Jones, 877 F. Supp. at 919-20, and Tanchak, 2009 WL 348270, at *7. (Def. Opp'n at 4-6.) Defendants argue these cases are analogous to the present case. Walking through the Rodgers factors, Defendants state that the sale of Mr. Cardaci's interest alone -- rather than the entire property -- would provide little value, given Mrs. Cardaci's legal and possessory interest in the property, too. (Id. at 5.) This fact leads to the unstated conclusion that the government would, in fact, suffer prejudice

---

[3] The Supreme Court stated "we are not blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head," noting that the "problem seems particularly acute in the case of a homestead interest." Id. at 704.

from a sale of the partial interest. Next, Defendants argue that Mrs. Cardaci has a legitimate expectation that her home would be protected from her husband's creditors. (Id.) Third, Defendants argue that Mrs. Cardaci would suffer prejudice from a sale, as she was the primary supporter of the household and paid the mortgage debt. (Id.) Moreover, four other family members would be displaced by a sale. (Id. at 5-6.) Defendants observe that in Tanchak, "no evidence was offered regarding prejudice against Mrs. Tanchak, yet the forced sale was denied." (Id. at 5.) Fourth, and finally, Defendants argue that Mrs. Cardaci "has a possessory interest in the property and she has at least a fifty (50%) percent interest in the property." (Id. at 6.) Defendants conclude that the forced sale should not be allowed.

The government, in reply, observes that Defendants submitted no evidence whatsoever in support of their position, and that this failure militates in favor of granting the order for the forced sale. (Pl. Reply at 3.) Defendants admitted that the partial sale would yield "little value," and there was no evidence adduced that Mrs. Cardaci reasonably expected the property would not be sold, or that she would suffer prejudice, or that her ownership interest was greater than Mr. Cardaci's. (Id.) Thus, the government argues that the Rodgers analysis does not permit the Court to exercise discretion to forbid the sale in this case. (Id.)

The government attempts to discredit <u>Jones</u> and <u>Tanchak</u> by stating those decisions did not properly apply the <u>Rodgers</u> "general presumption in favor of a sale." (<u>Id.</u> at 4.) In addition, the government distinguishes the cases by saying that the government in <u>Tanchak</u> had made certain concessions not replicated here, and in <u>Jones</u>, the non-liable spouse had previously held sole title to the property and lacked any employment that would allow her to pay for housing. (<u>Id.</u>) The government suggests that Defendants "seem to argue that entireties properties are categorically exempt from sale under section 7403," which <u>Rodgers</u> rejected. (<u>Id.</u> at 5.)

Defendants filed a reply brief in support of its cross-motion, and, although such a filing is not permitted by L. Civ. R. 7.1(d)(3) without leave of Court, the government has filed no objection. Defendants reiterate that Mrs. Cardaci has "a legally recognized expectation that the Property would not be subject to forced sale by the delinquent taxpayer or his creditors," citing <u>Dvorken v. Barrett</u>, 100 N.J. Super. 306, 309 (App. Div. 1968), <u>King v. Greene</u>, 30 N.J. 395 (1959), and <u>Belding & Bernhard, Inc. v. Advokat</u>, No. MRS-L-3263-02, 2007 WL 1108926 (N.J. Super. Ct. App. Div. Apr. 16, 2007). (Def. Reply at 1-2.) Defendant concludes that "the court may permit a judgment creditor . . . to levy on and sell the debtor-spouse's right of survivorship as well as his undivided one-half interest in the life estate." (<u>Id.</u>

14

at 3.) On the issue of the sufficiency of evidence, Defendants argue that "the relevant facts for Defendants' cross-motion are clear on the record," namely that Defendants are married and own property as tenants by the entirety and that the non-debtor spouse will be forced to move and lose the right of survivorship. (Id.) Defendants contend that prejudice to Mrs. Cardaci "is established by the fact that she would be forced to move from her [marital] home losing her right to survivorship." (Id.) Defendants also highlight Mrs. Cardaci's declaration and the fact that the court in Tanchak found in favor of the non-debtor spouse without evidence regarding prejudice. (Id.) Defendants' current position is that the record is not yet complete, given new family members that have taken up residence at the property since these motions were filed.

### a. Applicability of Rodgers

Defendants argue that Rodgers is not controlling in this case, because the property interests arising from a tenancy by the entirety under New Jersey law are different -- and more protective of Mrs. Cardaci's rights -- than the homestead interests at issue in Rodgers.

Judge Brotman reached the same conclusion writing in Jones, and his thoughtful analysis is worth quoting at length:

> A tenancy by the entirety is an interest quite distinct from the homestead right created by the Texas Constitution [in Rodgers]. First of all, a homestead right does not represent an ownership interest in

15

property, but is more like a personal right or privilege belonging to a spouse. That is, a homestead right vests in a spouse whether or not that spouse has any ownership interest in the property at all. Second, a spouse who predeceases the other spouse can still divest his ownership rights in the property or let them pass by intestate succession, subject to the surviving spouse's homestead right. Additionally, the surviving spouse does not receive anything akin to a right of survivorship, but instead receives a "personal privilege with the attributes and incidents of a life estate."

. . . In contrast to the homestead right, a tenancy by the entirety is: (1) a form of ownership in property; (2) does not arise unless both spouses are owners of the property; (3) is accompanied by a right of survivorship which grants the surviving spouse a fee interest in the entire property (not a personal privilege akin to a life estate); and (4) is a right which cannot pass by intestate succession or will of the predeceased spouse. Given the great disparity between the tenancy in the entirety and the homestead estate, the <u>Rodgers</u> holding cannot be controlling on the present facts.

<u>Jones</u>, 877 F. Supp. at 919 (internal citations omitted). As Judge Brotman also noted, the <u>Rodgers</u> Court itself distinguished tenancies by the entirety in a footnote: "More important, tenancies by the entirety pose a problem quite distinct from that at issue in the case of homestead rights." <u>Rodgers</u>, 461 U.S. at 702 n.31; <u>see</u> <u>also</u> <u>Jones</u>, 877 F. Supp. at 919 n.11 ("The Supreme Court did not address the type of tenancy by the entirety adopted by New Jersey law.").

The Court agrees that <u>Rodgers</u> is not directly controlling on the property interests at stake here, but it is instructive and persuasive in this case. Discretion regarding the forced sale of a marital home arises from the federal statute itself -- the Court "<u>may</u> decree a sale of such property," 26 U.S.C. § 7403(c) -

16

- and New Jersey law provides that a property interest created from a tenancy by the entirety is not so indestructible that martial property is never subject to partition. <u>See</u> <u>Newman v. Chase</u>, 70 N.J. 254, 266 (1976) ("We do not go so far to hold that a purchaser at an execution sale or from a receiver or trustee in bankruptcy may never be entitled to a partition. . . . But where, as in the present case, a bankrupt husband lives with his young family in a modest home, we hold that it is within the equitable discretion of the court to deny partition"); <u>Randazzo v. Randazzo</u>, 184 N.J. 101, 113 (2005) ("We disapprove of <u>Grange</u>[ <u>v. Grange</u>, 160 N.J. Super. 153 (App. Div. 1978)] to the extent it stands for the proposition that absent consent, the trial court lacks authority to order the sale of a marital asset prior to the judgment of divorce"); <u>Belding</u>, 2007 WL 1108926, at *7 ("a court of equity may deny a creditor's demand for partition of the marital home under circumstances demonstrating undue hardship to the debtor's family"); <u>Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi</u>, 389 N.J. Super. 219, 232 (Ch. Div. 2006) (stating that the "remedy of partition is not automatically available to a purchaser at execution sale of a debtor's interest in property held as a tenant by the entirety," noting that the court has discretion to deny partition). Because the Court has limited discretion to deny a forced sale, and because Mrs. Cardaci has raised a significant question of whether the equities of this

case militate against a forced sale, the Court will consider the
Rodgers factors in assessing the equitable factors in the record.
See Jones, 877 F. Supp. at 917-19 (analyzing the Rodgers
factors); Tanchak, 2009 WL 348270, at *7 (same).

### b. Analysis of the equities

Although the Court accepts that a forced sale is permissible
in some circumstances under New Jersey and federal law and the
government's interest in collecting taxes is generally paramount,
Rodgers, 461 U.S. at 711, the Court will consider the specific
circumstances of this case to determine whether the Court's
limited exercise of discretion is warranted.

Mrs. Cardaci makes several assertions in her certification
that raise a significant question as to whether a forced sale
should be permitted in this specific instance. She states that
her two adult sons, her daughter-in-law, and her 18-month-old
grandson live on the property.[4] (Cardaci cert. ¶ 10.) The
property's value, currently assessed at $184,600, permits the
inference that the home is modest. (Id. ¶ 8.) She states that
"[f]or several years I have provided financial support for Gary
S. Cardaci and our children by way of my occupation as a school
teacher," permitting the inference that she supports, in full or
in part, a family of six on a school teacher's salary. (Id. ¶ 4.)

---

[4] As previously noted, Counsel for Defendants has
represented to the Court that two additional children, ages 10
and 11, also live with the Cardacis on the property.

She also asserts that she expects to retire within six years. (Id. ¶ 9.) Together, these assertions permit the further inference that in the foreseeable future, Mrs. Cardaci, and, perhaps, some other family members, could face a significant reduction in income, which would exacerbate the harm of losing the marital home on which there is no mortgage. (Id. ¶¶ 6, 12.) As many as seven non-liable family members would be displaced as a result of a forced sale.

Because Mr. Cardaci's partial interest in the property would be worth less sold separately than as a percentage of the sale value of the entire property, the first Rodgers factor appears to weigh in favor of a forced sale. However, prejudice to the government is to be "measured as a matter of degree." Rodgers, 461 U.S. at 710. Other remedies, aside from a forced sale, remain available to the government. See Jones, 877 F. Supp. at 920 (ordering the non-liable spouse to pay to the government, as the cotenant out of possession, one-half the imputed rental value of the property); Tanchak, 2009 WL 348270, at *7 (ordering the defendants to pay over one-half of the imputed rental value of the real property each month until the judgment is satisfied). Currently, the record does not include an appraisal of the rental value of the property, and therefore, the Court cannot accurately measure the degree of prejudice the government would suffer from not selling the entire property at this time.

The second factor weighs strongly against a forced sale,
because Mrs. Cardaci, as a tenant by the entirety, "could
legitimately believe that the family home would be protected
against her husband's creditors by virtue of New Jersey's special
treatment of this time of property ownership." Jones, 877 F.
Supp. at 918 (citing Freda v. Commercial Trust Co. of N.J., 118
N.J. 36, 47 (1990), and Newman, 70 N.J. at 265-66). Mrs. Cardaci
declares as much in her certification. (Cardaci cert. ¶ 11.) In
New Jersey, tenants by the entirety hold as tenants in common for
their joint lives, with a right of survivorship indestructible by
unilateral action. Dvorken, 100 N.J. Super. at 308-09 (citing
King, 30 N.J. at 412-13). Although creditors may levy upon and
sell the debtor spouse's one-half interest in the life estate as
well as the right of survivorship, neither spouse may have
partition of the estate by the entirety, and the levying creditor
acquires no greater rights in the property than those of the
debtor spouse. Id. at 309. See also SEC v. Antar, 120 F. Supp. 2d
431, 449-50 (D.N.J. 2000) (describing New Jersey's tenancy by the
entirety, before declining to partition the marital property and
dispossessing a family of its home ). This property right is
significantly stronger than the homestead right analyzed in
Rodgers. Because federal courts "look initially to state law to
determine what rights the taxpayer has in the property," Craft,
535 U.S. at 278, the fact that Mrs. Cardaci's interest arises

20

from a tenancy by the entirety under New Jersey law, which strongly protects her right to possession and the right of survivorship, weighs strongly in her favor.

The record is incomplete on the third factor, which concerns personal dislocation costs and practical undercompensation for Mrs. Cardaci's interest. The record does not specify what dislocation costs Mrs. Cardaci would suffer, although certain costs may be inferred from the facts that there no mortgage on this property and any additional money Mrs. Cardaci would have to spend on housing would prejudice her. Given Mrs. Cardaci's right of survivorship under state law and the possibility of her taking the property in fee simple absolute, there is a potential risk of her undercompensation, although there is also the possibility that Mr. Cardaci would survive Mrs. Cardaci and take the property in fee simple. This factor is either neutral or likely weighs slightly against a sale, although the degree is unclear on this record.

As for the relative character and value of interests in the property, the record does not discuss the relative life expectancies of Mr. and Mrs. Cardaci, which could affect the likelihood of one spouse taking the property in fee simple. This factor could be neutral, if each spouse has an equal interest in the property, or could weigh for or against a forced sale, if the life expectancy of one spouse is significantly greater than the

other's.

The four Rodgers factors are not exhaustive. Rodgers, 461
U.S. at 711. Thus, the Court may consider the fact, as discussed
above, that a forced sale would displace as many as seven non-
liable family members, including three young children. In
general, the more innocent family members dispossessed by the
forced sale, the greater the harm and the more wary the Court
should be of ordering a sale. A head count, of course, is not
dispositive, but it is a consideration in this equitable
analysis. At the same time, the record does not indicate the
income or assets of the adults living at the property, which
could affect the weight of this consideration, nor does it
contain evidence of two additional children asserted to be living
at the property.

The evidence currently in the record, along with all
reasonable inferences drawn in favor of Defendants as the parties
opposing summary judgment, is enough to convince the Court that
the equities of this case may favor Defendants and militate
against a forced sale. However, Defendants contend, and the Court
agrees, that it is premature to decide this matter because the
record is incomplete. In fairness to both the government and
Defendants, the Court will deny in part without prejudice both
the government's motion for summary judgment and Defendants'
cross-motion, and hold a final hearing to address this remaining

issue. Counsel shall appear at a final scheduling conference before United States Magistrate Judge Ann Marie Donio to set the schedule.

To be clear, the Court does not hold that the parties must fill in the specific factual gaps noted above with admissible evidence, or that additional factors, not mentioned above, cannot be raised on the record. The Court's foregoing analysis merely illustrates that a more complete record could more clearly favor either the government or Defendants, and, in fairness, the Court will give the parties an opportunity to supplement the record at the final hearing to be scheduled.

### iii. Default judgment

Upon the government's request [Docket Items 20, 21 & 22], the Clerk of Court entered default against Defendants Ed Wood Custom Drywall, Inc. ("Ed Wood") and Tri-County Building Supplies, Inc. ("Tri-County"), on February 19, 2013, for failure to plead or otherwise defend in this action. The government now requests that default judgment be entered against Ed Wood and Tri-County and that the Cardaci property "should be sold free and clear of their interest without any claim by them to a distribution."[5] (Pl. Mot. Br. at 4.)

---

[5] At the government's request, the Clerk of Court also entered default against Defendant Lewis J. Morey. [Docket Item 20.] The government does not move for default judgment against Mr. Morey at this time. (See Notice of and Motion for Summary Judgment and Default Judgment [Docket Item 27] at 1 ("the United

Rule 55, Fed. R. Civ. P., provides that a plaintiff may seek entry of default judgment after "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" and the clerk enters their default. Fed. R. Civ. P. 55(a) & (b)(2). A party is not entitled to default judgment as of right. Bibbs v. Sec. Atl. Mortgage Co., Inc., No. 10-346, 2012 WL 3113975, at *2 (E.D. Pa. Aug. 1, 2012) (citing Prudential-LMI Commercial Ins. Co. v. Windmere Corp., No. 94-197, 1995 WL 422794, at *1 (E.D. Pa. July 14, 1995), and 10 Wright, Miller & Kane, Federal Practice & Procedure § 2685 (1983)). Rather, before entering default judgment, "district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." Malik v. Hannah, 661 F. Supp. 2d 485, 490 (D.N.J. 2009). The Third Circuit recently observed that it has "required consideration of the Poulis factors . . . when a district court enters a default judgment pursuant to Rule 55(b) as a sanction for failure to plead or otherwise defend, e.g., Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1148 (3d Cir. 1990)."

---

States will move . . . for default judgment against Defendants Ed Wood Custom Drywall, Inc. and Tri-County Building Supplies, Inc."); Proposed Judgment and Order of Sale [Docket Item 27-10] ¶ 4 ("Default judgment is entered against defendants Ed Wood Custom Drywall, Inc. and Tri-County Building Supplies, Inc., who have failed to plead or appear in this action . . . .").)

<u>Knoll v. Allentown</u>, 707 F.3d 406, 409 (3d Cir. 2013) (referencing <u>Poulis v. State Farm Fire & Cas. Co.</u>, 747 F.2d 863 (3d Cir. 1984)).[6]

Here, the current record does not shed light on whether the parties subject to default have a meritorious defense, however they appear to be personally culpable for their failure to plead or otherwise respond in this case, as summonses were returned executed and these Defendants have not responded in any fashion in more than a year. (<u>See</u> Docket Items 18 & 19 (summonses returned executed, served on October 1, 2012).) The conduct appears willful, if not in bad faith. Moreover, as the government seeks to collect from tax delinquents, the government would be prejudiced if the defaulted Defendants remained silent only to reassert an interest in the Cardaci property at this stage of the litigation. While there is no history of dilatoriness by the defaulted Defendants in this case, there appears to be no alternative sanctions that would be effective in spurring their

---

[6] The <u>Poulis</u> factors are:

(1) the extent of the <u>party</u>'s personal <u>responsibility</u>; (2) the <u>prejudice</u> to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a <u>history</u> of dilatoriness; (4) whether the conduct of the party or the attorney was <u>willful</u> or in <u>bad</u> <u>faith</u>; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of <u>alternative</u> <u>sanctions</u>; and (6) the <u>meritoriousness</u> of the claim or defense.

<u>Poulis</u>, 747 F.2d at 868 (emphasis in original).

participation. Combined, these factors suggest that the entry of default judgment is appropriate.

By entering default judgment against Defendants Ed Wood and Tri-County, the Court orders that they have no interest in the Cardaci property and are not entitled to any distributions or other payment derived from the value of the property.

### B. Defendant's cross-motion for summary judgment

For the reasons explained above, Defendant's cross-motion for summary judgment dismissing Count III, the foreclosure of federal tax liens on the property, is denied with prejudice, and Defendant's cross-motion on the forced sale is denied without prejudice.

## V. Conclusion

The government's motion for summary judgment is granted in part and denied without prejudice in part, and Defendants' cross-motion is denied with prejudice in part and denied without prejudice in part. A judgment shall be entered in favor of the U.S. government and against Defendant Gary Cardaci in the amount of $80,084.87, plus interest accruing after February 12, 2013, and until the judgment is fully paid. The government has a valid federal tax lien on all property rights of Mr. Cardaci, including his ownership interest in the real property located at 424 Breakwater Road in Cape May, N.J. However, the Court denies in part without prejudice the government's motion for summary

judgment and denies in part without prejudice Defendant's motion for summary judgment as to the forced sale of the Cardaci property, and the Court will hold a final hearing to supplement the record as specified in this Opinion. An accompanying Order will be entered.


**October 29, 2013**            **s/ Jerome B. Simandle**
Date                            Jerome B. Simandle
                                Chief U.S. District Judge