IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 12-5402 (JBS/AMD) |
| v. | |
| GARY S. CARDACI et al., | **OPINION** |
| Defendants. | |

**SIMANDLE, Chief Judge:**

This matter comes before the Court on the motion of Defendants Gary S. Cardaci and Beverly M. Cardaci (hereinafter, "Defendants") to alter or amend [Docket Item 88], under Fed. R. Civ. P. 59(e), the final judgment [Docket Item 70] ordering Defendants to pay to the IRS one-half the imputed rental value of their home each month, in the amount of $750, until the satisfaction of Gary Cardaci's tax debt, as a condition of the Final Judgment in favor of the United States entered herein on November 26, 2014 after more than three years of litigation and trial. The imputed monthly rental value of the Cardaci's home was calculated at $1,500 based upon Defendants' testimony during the bench trial. Defendants now argue that the judgment should be reopened due to newly discovered evidence consisting of two recent letters concerning the rental value of the Cardaci property, obtained in December 2014. These local real estate

agents suggest that the monthly rental value of the Cardaci's home less monthly taxes and monthly insurance should be set at $747.70 and the monthly payment reduced to $373.70 when their views are averaged.

The Court will deny Defendants' motion to amend the final judgment. The Court finds as follows[1]:

1.    This action was originally brought by the United States Government to foreclose a federal tax lien on the marital home and surrounding property owned by Defendants Gary S. Cardaci and his wife, Beverly M. Carcadi, as tenants by the entirety. The Government sought satisfaction of a judgment of over $80,000 entered against Gary Cardaci for failing to pay over taxes withheld from the wages of his employees at the Holly Beach Construction Company in 2000 to 2001.

2.    The Government filed a motion for summary judgment [Docket Item 27] and sought an order, pursuant to 26 U.S.C. § 7403, for a forced sale of the Cardacis' marital home, with half the net proceeds to be distributed to Beverly Cardaci and with proceeds from the remaining half to be applied against Gary Cardaci's liability to the United States. The Cardacis opposed the Government's motion and cross-moved for summary judgment

---

[1] The Court assumes the parties' familiarity with the underlying facts of this case and recites briefly only those facts relevant to deciding the instant motion.

2

[Docket Item 33], arguing that the district court should use its discretion to deny the foreclosure and forced sale of property owned as a tenancy of the entirety.

3.   On the issue of a forced sale, the Court denied both motions [Docket Item 46], holding that the record lacked essential facts necessary to determine whether the balance of equities weighed in favor of a forced sale. In particular, the Court stated that other remedies, such as ordering Defendants to pay over one-half the imputed rental value of the property each month, might be available, while protecting the interests of the United States in collection of taxes, as well as the interests of the non-liable taxpayer's interests as a joint tenant by the entirety with right of survivorship in this marital residence. Among other things, the Court concluded that "the record does not [currently] include an appraisal of the rental value of the property, and therefore, the Court cannot accurately measure the degree of prejudice the government would suffer from not selling the entire property at this time." (Oct. 29, 2013 Op. at 19.)

4.   Following the denial of summary judgment and in preparation for trial, the parties submitted a Joint Final Pretrial Order. (J. Final Pretrial Order [Docket Item 55].) In the Order, the Government stated that it would seek "other orders protecting the United States' ability to collect the taxes at issue with certainty" should the Court decline to order

an immediate sale in this case. (Id. at 9.) The Government also noted that Beverly Cardaci may be called as a witness to testify that rent on a comparable house would be $1,000 to $1,500 per month. (Id. at 5.) Finally, the Government stated that should the Court decline to order an immediate sale of the property, it would require an accounting from Mrs. Cardaci of $750 per month to ensure that the United States had a secured interested that would survive if Mr. Cardaci predeceases Mrs. Cardaci. (J. Final Pretrial Order at 3.) Defendants stated that there was no basis for the Government's request for an accounting "without any evidence as to the fair rental value of the property," (id. at 4), but did not otherwise signal that it would contest the fair rental value of the property at trial.

5.   In addition, prior to the non-jury trial, the parties submitted separate Proposed Findings of Fact and Conclusions of Law, and the Government submitted the following proposed fact: "According to Beverly Cardaci, a comparable residence would cost up to $1,500 per month to rent." (Gov't Proposed Findings of Fact and Conclusions of Law [Docket Item 60] ¶ 59; see also id. ¶ 81 ("Based on the US Trustee's tables and Mrs. Cardaci's own testimony, the fair rental value on her property . . . is no more than $1,500 per month.").) The Cardacis submitted that "[t]he government has not determined what the rental value of the property is, but has estimated it to be approximately $1,500

per month." (Def. Proposed Findings of Fact and Conclusions of Law [Docket Item 59] ¶ 18.)

6.   A bench trial was conducted on January 30, 2014, and March 10, 2014. At trial, the Government elicited testimony from Beverly Cardaci that a three-bedroom house like the one owned by the Cardacis would rent for as much as $1,500 in their neighborhood. (1/30/14 Trial Tr. 76:23-25.) Gary Cardaci also testified that a two- bedroom home in the area would rent for approximately $1,000, and that a three-bedroom home, like the one owned by the Cardacis, would rent for more. (Id. 90:23-91:2.) The Court also elicited testimony from the Cardaci's adult son, Garrett Cardaci, also residing in this residence, about the house's rental value, after noting that one of the proposals in the case was to have the Cardacis pay "some sort of rental value equal to half of the rental to the IRS in lieu of [the Government] taking their property." Garrett Cardaci testified that he had "looked in the past around our area for rentals," that the range for rentals was between $1,200 and $2,000, and $1,500 was in the ballpark for a comparable unit. (Id. 116:21-117:16.)[2] Defendants raised no objection to this

---

[2] Specifically, Garrett Cardaci testified to the following:
    THE COURT: . . . But if that did happen, and there's been testimony that a house of this type rents for around $1,500 per month in that area, first, do you agree that $1,500 is a fair estimate of what it would cost to rent a house like this?

figure. Although Defendants were permitted at trial to introduce new exhibits not on the exhibit list, they did not present any counter evidence regarding the house's rental value, nor did they submit proposed supplementary findings of fact on this issue.[3] Neither party provided market data for home rentals in the area.

    7.   After receiving all evidence at trial, the Court exercised its discretion under 26 U.S.C. § 7403(c) to deny a forced sale of the Cardaci marital property, explaining that although a district court may order the forced sale of a property held as a tenancy by the entirety, the equitable factors in the case ultimately weighed against it. (Findings of Fact and Conclusions of Law [Docket Item 69] at 46-49.) The Court granted alternative relief in lieu of a forced sale, which the Government had sought as alternative relief in its Joint

---

       THE WITNESS: I honestly have been – have looked in the past around our area for rentals and I wouldn't – not to compare it to other things, but, yes, there are houses from $1,200 to $2,000 for rent in that area. I wouldn't know exactly how to categorize it compared to the other ones but –

    THE COURT: $1,500 is in the ballpark.

    THE WITNESS: It's in the ballpark I would think.

    THE COURT: And half of that would be $750 a month?

    THE WITNESS: Yes.

(1/30/14 Trial Tr. 117:3-16.)

[3] The Joint Pretrial Order reserved to counsel the right to "submit additional requests during the course of the trial on those matters that cannot reasonably be anticipated." (J. Final Pretrial Order at 11.)

Final Pretrial filing as noted above, and which the Government endorsed at closing, (3/10/14 Trial Tr. [Docket Item 71] 170:25-171:10), and ordered Defendants to pay to the IRS one-half the imputed rental value of the property until the judgment was satisfied. (Id. at 49.) The Court made a factual finding that a comparable home in the area would rent for $1,500 per month, noting that neither party provided appraisal data for home rentals, but that Garrett Cardaci testified at trial that $1,500 monthly rent was a reasonable figure. The Court found the testimony credible, and ordered the monthly payment to be in the amount of $750 per month. (Id. at 9, 49.) The Court explained that this payment plan was a more equitable remedy because it "addresses Mr. Cardaci's delinquent tax liability, preserves the family home, and recognizes that the payment of imputed rent for Mr. Cardaci's share is within the financial ability of the household and far superior to the alternative of forced sale and dispossession." Id. at 50.) The Court entered final judgment [Docket Item 84] after considering written proposals on the form of the order from both parties.

8.   The Cardacis now move to amend the judgment under Fed. R. Civ. P. 59, seeking to reduce the monthly payment to $373.70 based on two recently completed appraisals of the rental value of their home. Defendants attach two certifications by two different realtors. In the first certification by Daniel J.

7

Senico, a broker at Apex Realty, Inc. in Villas, New Jersey, Mr. Senico states that based upon his knowledge of homes in the area, the average monthly rental for a similarly-sized two-bedroom home is between $1,000-$1,100 per month. (Senico Cert. [Docket Item 88-1] ¶¶ 4-5.) The second certification is from Glenn Heathcote, a realtor at Coldwell Banker, James C. Otton Real Estate, Inc. in North Wildwood New Jersey, who asserts that the Cardaci's two-bedroom home has an estimated rental value of $875 per month. (Heathcote Cert. [Docket Item 88-2] ¶ 4.) Defendants argue that the net monthly rental value should be the average of these two valuations, minus the monthly cost of real estate taxes and casualty insurance, which Defendants calculate at $240.10.[4] Taking the average of $1,000 and $875 (which is $987.50) and subtracting $240.10 from that amount, the net monthly value is $747.40.

9.   The Cardacis argue that the Cardacis' own testimony regarding the $1,500 monthly rental value lacked a proper foundation, and the judgment should be revised to permit them to pay one half of $747.40, or $373.70 per month. (Def. Br. [Docket Item 88] at 3.) They argue that there was no opportunity to

---

[4] In a third certification, Gary Cardaci asserts that the property taxes for the Cardaci property were $2,447.14 in 2014, and the annual casualty insurance for the property is $434.00. Thus, Defendants calculate the monthly cost of property taxes at $2,447.14/12, or $203.93, and the monthly cost of insurance at $434/12, or $36.17.

provide evidence on the rental value of the Cardaci property because it "was not at issue in the underlying litigation." (Id. at 1.) Defendants argue that the Government never sought alternative relief in the form of rental payments, either in its Complaint or during pretrial proceedings, and the issue of rental payments was never raised at trial. (Id. at 1-2; see also Def. Reply [Docket Item 91] at 1-2.) Finally, they argue that the estimate of $1,500 provided by the Cardacis was unreasonable in light of other evidence submitted by the Government stating that the rental price for comparable housing in Cape May County was $1,151. (Def. Reply at 3.)

10.  The Government argues that there is no basis for amendment under Fed. R. Civ. P. 59(e). They argue that Defendants' evidence could have been presented before trial, since the Government made clear before trial that it was seeking alternative relief in the form of rental payments and the issue was actually tried before the Court. (Pl. Opp'n [Docket Item 90] at 1-2.) They also argue that the Court did not err in permitting the Cardacis to testify to the value of their property, and that even if the lay opinion testimony was somehow improper, it did not constitute clear error because it was not unreasonable. (Id. at 3-4.)

11.  The Government first argues that Defendants' motion must be denied because it was untimely filed. A motion to alter

9

or amend a final judgment under Fed. R. Civ. P. 59(e) must be
filed "no later than 28 days after the entry of the judgment."
Fed. R. Civ. P. 59(e). The Final Judgment was entered on
November 26, 2014 [Docket Item 84], and Defendants filed the
instant motion 28 days later, on December 23, 2014.

12.   The Government attempts to count August 21, 2014, as
the date of judgment, because the Court's findings and order
entered on that day fixed the rental value of the Cardaci
marital property. (Pl. Opp'n at 1.) However, under Rule 59(e),
motions must be filed "within twenty-eight days of entry of
*final judgment*." Tucker v. I'Jama, 404 Fed. Appx 580, 581 (3d
Cir. 2010) (emphasis added). For purposes of an appeal, "a final
judgment is generally regarded as 'a decision by the district
court that ends the litigation on the merits and leaves nothing
for the court to do but to execute the judgment.'" Lauro Lines
s.r.l. v. Chasser, 490 U.S. 495, 497 (1989) (quoting Van
Cauwenberghe v. Biard, 486 U.S. 517, 521 (1988)); see also O.
Hommel Co. v. Ferro Corp., 659 F.2d 340, 353 (3d Cir. 1981)
(defining "judgment" within the context of a Rule 50(b) and Rule
59(b) motion as a "final judgment," which comprises "a decree
and any order from which an appeal lies").

13.   Although the Court's August 21st order was captioned
"Judgment" and decided the form of relief to the Government, the
Court made clear that it was not entering a final judgment in

10

the case. In the Findings of Fact and Conclusions of Law, and in the order itself [Docket Item 70], the Court specifically directed the parties to jointly submit a proposed Final Judgment within 30 days that would include specific terms implementing the directives in the Court's opinion.[5] Nor did the Government appear to treat the August 21st order as a final judgment, since the first notice of default for missing monthly payments [Docket Item 92] was for a missed payment on January 1, 2015, the first payment due after the Final Judgment order was entered on November 26, 2014.[6]

14. Although Defendants' Rule 59(e) motion appears to be timely, the Court agrees with Plaintiff that it must be denied because Defendants have not raised a valid basis for amending the Court's judgment. Rule 59(e) is the mechanism "used to allege legal error." United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003). A party seeking to amend a judgment under Rule 59(e) must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence

---

[5] Specifically, the Court directed the parties to propose terms specifying the mechanics of making monthly payments to the United States and providing for the preservation of the asset; providing that local taxes be kept current and that Defendants perform normal maintenance and repairs; providing for a default clause; and providing that the Court maintain jurisdiction over the manner. (Findings of Fact and Conclusions of Law at 51-52.)
[6] Moreover, in its own brief, the Government calls the August 21st order an "interlocutory order," and not a final judgment. (Pl. Opp'n at 1.)

not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice. Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (reciting the three grounds for a Rule 59(e) motion); Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (same); Tehan v. Disability Management Serv., Inc., 111 F. Supp. 2d 542, 549 (D.N.J. 2000).

15.  Because reconsideration of a judgment after entry is an extraordinary remedy, requests to amend or alter the judgment under Rule 59(e) are to be granted "'sparingly.'" Interfaith Comty. Org. Inc. v. PPG Indus., Inc., 702 F. Supp. 2d 295, 317 (D.N.J. 2010) (quoting NL Indus. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996)). A motion for reconsideration does "not provide the parties with an opportunity for a second bite at the apple," Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998), nor may it be used "to raise arguments or present evidence that could have been raised prior to the entry of judgment." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2810.1. Rather, the motions may generally "be used only to correct manifest errors of law or fact or to present newly discovered evidence." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011); Castillo v. Fed. Bureau of Prisons, No. 13-7831, 2013 WL 4431325, at *2 (D.N.J. Aug. 15, 2013).

16.   Defendants do not specify the grounds for amending the judgment, but they appear to argue that the new appraisals of their property constitute new evidence that was not available when the Court issued its order. Specifically, Defendants argue that they could not have anticipated the need for evidence concerning the market rental value of their property, because the form of relief ordered by the Court was not contemplated until the Court's opinion. The Court strongly disagrees.

17.   Contrary to Defendants' contention, satisfaction of the judgment through monthly rental payments was a remedy that was raised well before trial. First, in Defendants' own opposition to the Government's motion for summary judgment, filed more than six months before trial, Defendants relied specifically on cases in which the court declined to order a forced sale of the property in favor of a remedy requiring defendants to pay one-half the imputed rental value of the property. (See Def. Opp'n to Mot. for Summ. J. [Docket Item 32] at 4) (discussing United States v. Jones, 877 F. Supp. 907 (D.N.J. 1995) and United States v. Tanchak, Civ. No. 07-1475, 2009 WL 348270 (D.N.J. Feb. 5, 2009)). In its opinion denying summary judgment, the Court examined both Jones and Tanchak, noting that summary judgment was not appropriate because the record "does not include an appraisal of the rental value of the property" and "[o]ther remedies, aside from a forced sale,

13

remain available to the government." (Oct. 29, 2013 Op. at 19.)
The Court therefore signaled long before trial that it was
contemplating the alternative remedy of monthly payments based
on the Cardaci property's rental value, consistent with case law
upon which the Cardacis themselves had relied.

18.  Moreover, Beverly Cardaci was asked about the rental
value of her house at deposition, and the Government placed the
amount into issue by noting in the Joint Final Pretrial Order
that Mrs. Cardaci may be called as a witness to testify that the
rent was between $1,000 and $1,500. The Government also
explicitly stated in the Pretrial Order that it would seek
"other orders protecting the United States' ability to collect
the taxes at issue" should the Court decline to order a forced
sale. (J. Final Pretrial Order at 9.)

19.  In addition, both the Government and the Court
elicited testimony about the property's rental value at trial.
The Government asked both Beverly and Gary Cardaci to estimate
the rental price based on their knowledge of similar three-
bedroom homes in the area, and the Court likewise asked Garrett
Cardaci whether $1,500 was a fair estimate of rent. In posing
the question to Garrett Cardaci, the Court stated directly that
one proposal in the case was to have the Cardacis pay "some sort
of rental value equal to half of the rental" value of the home.
And the Government reiterated at closing that the Cardacis had

14

placed the rental value at $1,500, and that it was seeking "alternative relief just as we did in Tanchak where the Court granted us rent without us pleading it as a separate count." (3/10/14 Trial Tr. 170:25-171:8.)

20.   Defendants therefore cannot argue that they had no notice the Court would use a portion of the rental value of the property as an alternative to a forced sale. Defendants had several opportunities before and during trial to present the evidence they now seek to admit, and indeed, under the Joint Final Pretrial Order, could have obtained and submitted appraisals as supplemental evidence even after trial. They failed to do so, and have provided no compelling reason why they could not have sought appraisals of the property prior to the entry of final judgment.[7]

---

[7] The Court also rejects Defendants' argument that reconsideration is warranted because the remedy was not pled as a separate count in Plaintiff's Complaint. (Def. Reply at 2.) The Amended Complaint sought a forced sale, but also asked the Court to grant "all other relief as deems just and proper." (Am. Compl. [Docket Item 3] ¶ 36.D.) Defendants provide no support for their argument that an alternate remedy must specifically be contemplated in the complaint for it to be considered at trial. Defendants' present argument is also disingenuous, as noted above, because Defendants themselves invoked cases seeking the relief ultimately granted in this case, and the Court specifically raised the issue of ordering payment based on one-half the property rental value during the trial. In Tanchak, the district court ordered such relief even when it was not explicitly requested in the Complaint, see United States v. Tanchak, No. 07-1475, Am. Compl. [Docket Item 11] ¶ 17 (seeking forced sale of property and "such other and further relief as deemed just and proper"), and the Court will do so here.

21.  Nor does the Court find that the admission of
testimony from the Cardacis regarding the fair rental value of
their home constituted a clear error. Defendants argue that the
Cardacis' testimony was "not based on any evidence or comparable
rental values," but they provide no support for the argument
that property owners are not qualified to testify to the value
of their land. "A landowner is presumed to have special
knowledge of his property. His testimony as to the value of his
land is therefore 'admitted in federal courts *without further
qualification*.'" United States v. 79.20 Acres of Land, 710 F.2d
1352, 1357 (8th Cir. 1983) (quoting United States v. 3,698.63
Acres of Land, 416 F.2d 65, 67 (8th Cir. 1969)) (emphasis
added). Cf. United States ex rel. TVA v. Easement and Right of
Way, 405 F.2d 305, 307 (6th Cir. 1968) (in determining land's
fair market value, "opinion evidence usually may be admitted

---

Moreover, the United States succeeded in obtaining judgment
against Gary Cardaci as pled, and the manner of execution of
that judgment, whether by forced sale or lesser included relief
of the type granted here, is what the trial was all about, as
all counsel acknowledged throughout this process. Even if a
separate pleading count were required, which it was not, the
Final Pretrial Order, as noted above, supersedes the pleadings
and contained clear notice of this alternative relief to forced
sale. See Rule 16(d), Fed. R. Civ. P.; Barista v. Weir, 340 F.
2d 74, 85 (3d Cir. 1965) ("It is, of course, established law
that a pretrial order when entered limits the issues for trial
and in substance takes the place of the pleadings covered by the
pretrial order."); Hoagburg v. Harrah's Marina Hotel Casino, 585
F. Supp. 1167, 1175 (D.N.J. 1984) ("A Joint Final Pre-Trial
Order, once filed, supercedes the pleadings.").

from those who are not strictly experts, the test being whether
it can be shown the witness knows the land and its surroundings
and has an opinion as to value based upon more than mere
conjecture.").

22.   Indeed, the Federal Rules of Evidence permit
landowners to give opinion evidence as to the value of their
land because they are presumed to have special knowledge of
their own property based on ownership. Fed. R. Evid. 702
advisory committee note ("[W]ithin the scope of the rule are not
only experts in the strictest sense of the word, . . . but also
the large group sometimes called 'skilled' witnesses, such as
bankers or landowners testifying to land values."). One
authority on eminent domain proceedings has similarly noted that

> "[t]he owner of land taken is generally recognized as
> qualified to express his opinion as to its value merely
> by virtue of his ownership. The owner is deemed to have
> sufficient knowledge of the price paid, the rents or
> other income received, and the possibilities of the land
> for use . . . ."

Nichols, The Law of Eminent Domain § 23.03 at 23-30 (1990)
(citations omitted) (quoted in United States v. 68.94 Acres of
Land, 918 F.2d 389, 397 (3d Cir. 1990)).

23.   The Third Circuit follows the general rule articulated
in the advisory committee notes to Fed. R. Evid. 702, and
permits landowners to testify to land value. See United States
v. Wiseman, 339 Fed. App'x 196, 199 (3d Cir. 2009) (holding that

17

district court did not abuse its discretion in allowing landowner to testify to the value of his property because "it has been long and widely recognized that, 'as a general rule, the opinion of a landowner as to the value of his land is admissible without further qualification because of his close relationship with the land.'" (quoting District of Columbia Redevelopment Land Agency v. Thirteen Parcels of Land, 534 F.2d 337, 339 (D.C. Cir. 1976))); 68.94 Acres of Land, 918 F.2d at 398 (recognizing the general rule "permit[ting] the admission of a landowner's value testimony"); Kinter v. United States, 156 F.2d 5, 7 (3d Cir. 1946) (owner of land "may, because of his personal knowledge of the property, the uses to which it may be put, the condition of the improvements erected therein, testify as to its market value."); United States v. 215.7 Acres of Land, 719 F. Supp. 273, 276 (D. Del. 1989) ("Landowners are qualified to testify on the value of the taking.").

24.   The Cardacis' testimony was alternatively admissible under Fed. R. Evid. 701, which permits lay persons to give opinion testimony that is based on the witness's personal knowledge and rational perception. Fed. R. Evid. 701. In Asplundh Mfg. v. Benton Harbor Eng'g, the Third Circuit explained that Rule 701 liberalized the admissibility of opinion evidence, and its adoption "was rooted in the modern trend away from fine distinctions between fact and opinion and toward

18

greater admissibility." 57 F.3d 1190, 1198 (3d Cir. 1995). Created in contemplation of that purpose, Rule 701 thus permits witnesses to express opinions that are not shorthand statements of fact so long as "they have a reasonable basis – grounded either in experience or specialized knowledge – for arriving at the opinion expressed." Id.; see also American Marine Rail NJ, LLC v. City of Bayonne, 289 F. Supp. 2d 569 (D.N.J. 2003). In Asplundh Mfg., the Court noted that "quintessential Rule 701 opinion testimony" includes, among other things, "the value of one's property," because such testimony meets the core definitional terms of Rule 701 – "the opinion is based upon person's knowledge, is rationally based thereon, and is helpful to the trier of fact." 57 F.3d at 1197-98. The Cardacis' opinion testimony on the rental value of their residence was firmly within the parameters of Rule 701: It was grounded in personal experience and first-hand knowledge of the home in which Beverly and Gary Cardaci had lived for over 35 years and Garrett Cardaci for over three years, the Cardacis' long-standing familiarity with the surrounding neighborhood, and Garrett Cardaci's own experience looking in the same area for rentals of houses. (See 1/30/14 Trial Tr. 117:3-16, supra.) Thus, the Court did not commit clear error in allowing the Cardacis to testify to the rental value of the property.

25.  It was also well within the Court's prerogative to
make a factual finding as to the imputed rental value of the
Cardaci home after considering testimony from three witnesses
(including the landowners, Beverly and Gary Cardaci and their
adult son, Garrett, who priced rental houses in the area,
presumably as a residence for his family of five) and making a
determination that the testimony was reliable and credible. See,
e.g., United States v. 79.20 Acres of Land, 710 F.2d 1352, 1357
(8th Cir. 1983) (noting that weight to be given to factual and
opinion evidence on fair-market value of property is for trier
of fact). The estimate of $1,500 was not contradicted by any
other evidence at trial. "[W]hen a trial judge's finding is
based on his decision to credit the testimony of one of two or
more witnesses, each of whom has told a coherent and facially
plausible story that is not contradicted by extrinsic evidence,
that finding, if not internally inconsistent, can virtually
never be clear error." Anderson v. Bessemer City, 470 U.S. 564,
575 (1985).

26.  Finally, the Court notes that a rental value of $1,500
does not appear to be unreasonable in light of other evidence.
The Government submitted a U.S. Trustee's Table for Local
Housing and Utilities Standards for Cape May County, which notes
the expected housing and utility costs for individuals and
families in the area. (Gov't Trial Ex. 114; United States'

Proposed Findings of Fact and Conclusions of Law [Docket Item 60] ¶ 46.) Based upon that table, the average cost of rent in Cape May County for a house accommodating five or more people is calculated to be $1,151. Given that the Cardaci home accommodates eight people (see Findings of Fact and Conclusions of Law, at 6), Garrett Cardaci's estimate that the three-bedroom home could rent for $1,500 was within the realm of reason and helped to establish a reasonable rental figure. Defendants' two belated certifications estimating lower rental values may also underestimate the rental value of the property, as both certifications are based upon the rental value of a two-bedroom house, while the Cardaci home has three bedrooms. (See id. at 9.)

27. In any event, the Defendants have not presented new evidence that was unavailable at the time of trial, nor should this Court's judgment be amended to correct manifest injustice under Rule 59(e). The alternate relief granted by the Court at trial was far more favorable to Defendants than the immediate loss of their marital domicile, and the issue of a fair rental value in lieu of immediate forced sale was present throughout this case. Defendants had more than a fair and full opportunity to have adduced more evidence at trial and there is simply no justification for setting aside the judgment to give Defendants yet another chance to do so.

28.  For the reasons stated above, the Court will deny Defendants' motion to alter the judgment. The accompanying Order will be entered.


**August 11, 2015**                              **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 Chief U.S. District Judge

22